## ANDREWS *v.* ANDREWS.

### Opinion delivered February 15, 1915.

1. PARENT AND CHILD—CUSTODY—FATHER.—The father is the natural guardian of his child and is *prima facie* entitled to its custody, and this right will be enforced unless some sufficient reason is shown for the court to order otherwise.

2. PARENT AND CHILD—CUSTODY.—The custody of a child of tender years will not be taken from the mother and awarded to the father, although the father secured a divorce for cause on the wife's part, where the wife and mother was living with her father, who was able to provide for her and the child, and where she was, under the evidence, a suitable guardian for the infant.

3. EQUITY JURISDICTION—CUSTODY OF CHILD.—Equity properly may retain jurisdiction of an action involving the custody of the child of a divorced husband and wife, so that proper orders may thereafter be made, looking to the welfare of the child.

Appeal from Sebastian Chancery Court; *W. A. Falconer,* Chancellor; affirmed.

*Tom W. Neal,* for appellant.

Under the law the father is first entitled to the custody of his child. 37 Ark. 27. This rule is universally followed by this court, and there is no reason why it should not be applied here. Of course, the State, as *parens patriae,* acting through the chancery court, can modify the rule, for good reasons shown, but this power is never exercised to the child's injury. The best interest of the child should always be considered. Upon the evidence, the decree is contrary to the evidence, and should be reversed. This is a case where the chancellor's discretion was abused.

*Holland & Holland,* for appellee.

The welfare of the infant is the controlling factor in cases of this kind. 42 Mich. 509; 80 Ark. 289; 78 *Id.* 193. Under the facts the chancellor was warranted in giving the custody to the mother. 78 Ark. 598. No abuse of discretion is shown.

SMITH, J. This case involves the right to the custody of an infant girl child named Alletta Andrews, and the parties to the litigation are its father and mother. The court below awarded the custody of the child to the mother, but imposed the condition that the father should be permitted to see the child at all reasonable times, and required the mother to give a bond, with her father, with whom she is now living, as surety, that the child should not be taken out of the jurisdiction of the court.

It appears that, after having borne a good reputation from earliest childhood, the wife forgot her duty and deserted her husband, and left the State in company with one Dave Scott, with whom she resided for some months as man and wife. But in her fall, she did not forget her child, and carried it with her, and appears never to have lost any of her affection for it. A child was born as the result of this illicit relation, and the mother now has that child, as well as the one involved in this litigation, in her custody. Appellee, the mother, was visited by her father, George Salsman, while she was living with Scott, in Missouri, and was induced to return with her father to his home in this State, where she has since resided. The proof is that appellee, after returning to her father's home, was deeply penitent and confessed her grievous wrong to the members of her church, and promised to make such atonement as she could by leading thereafter a blameless life. No question is made as to her present conduct, and her neighbors testified that they now regard her as morally fit to have the custody of the child, and she was again received by her church in full fellowship. Mr. Salsman is shown to be financially able to provide a suitable home, and is willing to do so.

Appellant resides in Oklahoma, and obtained a divorce in that State upon constructive service, after which

he instituted this proceeding. He is shown to be a man of good character and able to suitably provide for his child, and to have been without fault in his domestic troubles.

(1) The father is the natural guardian of his child, and is *prima facie* entitled to its custody. This right of the father is not an absolute one, however, to be enforced under all circumstances; yet it is so well recognized and established that it will be enforced unless some sufficient reason is shown for the courts to order otherwise. A late case on this subject is that of *Mantooth* v. *Hopkins,* 106 Ark. 197, where a number of previous decisions of this court are cited and reviewed, and in that case the court quoted from *Coulter* v. *Sypert,* 78 Ark. 195, as follows: "When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw it from other persons, it will look into all the circumstances and ascertain whether it will be for the real, permanent interest of the infant; and if the infant be of sufficient discretion, it will also consult its personal wishes. It will free it from all undue restraint and endeavor as far as possible to administer conscientious duty with reference to its parental welfare. It is an entire mistake to suppose that a court is at all events bound to deliver over an infant to its father, or that the latter has an absolute vested right in its custody."

In the case of *Lipsey* v. *Battle,* 80 Ark. 287-289, Judge RIDDICK said: "In questions of this kind concerning the custody of infants, the main consideration that should influence the court is the best interest and well-being of the child. *Coulter* v. *Sypert,* 78 Ark. 195. The courts may remove a child from the custody of its parent, but this will only be done when it is plainly necessary to secure the present and future well-being of the infant."

(2) A sufficient reason here for not taking the child from the mother and delivering it to the father is the tender age of the child, who is shown to be only four years old. This consideration, however, while always weighty, is not always controlling. It is to be counterbalanced against the child's real interest, and when that interest

requires it, the custody is not awarded to the mother of the child.

(3)     The court below properly retained jurisdiction of this case for the purpose of making any orders that may hereafter become necessary for the well-being of the child. If its mother should again stray from the path of right living, or other considerations arise, which required such action, the court could, and should, make appropriate orders for the delivery of the child to its father. The decree is therefore affirmed.