AUCOIN *v.* AUCOIN.

4-8085                                    200 S. W. 2d 316

Opinion delivered March 3, 1947.

Rehearing denied April 7, 1947.

*Kermit B. Duidroz* and *M. P. Matheney*, for appellant.

*John M. Shackleford*, for appellee.

MINOR W. MILLWEE, Justice. Appellee, Glen Aucoin, instituted suit in the Union Chancery Court on November 14, 1945, against appellant, Ivy Aucoin, for divorce and for the custody of two children allegedly born of the marriage of the parties. The children are boys and, when suit was filed, were of the ages of three years and five months, respectively. As a ground for divorce, appellee alleged personal indignities and cruelty on the part of her husband.

Appellant filed an answer containing a general denial of the allegations of the complaint, but admitting appellee's residence in Union county and jurisdiction of the court. He also filed a cross-complaint in which he sought a divorce from appellee on the grounds of desertion and adultery. Appellant denied paternity of the

younger child, but asked for custody of both children in the event the court should find that the younger child was born of their marriage. Thereafter, appellee amended her complaint to ask for alimony *pendente lite,* support money for the children and attorney's fee.

A lengthy hearing in which 26 witnesses testified was concluded on April 3, 1946. The trial court made extensive findings in which it was determined that appellee had failed to sustain her charge of cruelty and indignities by sufficient evidence and her prayer for divorce was denied. On his cross-complaint, appellant was granted a divorce from appellee for desertion. The custody of both children was awarded to appellee, with the right of visitation in appellant at all reasonable times and places. Appellant was directed to pay $30 per month for the support and maintenance of the children. Appellee's prayer for alimony and attorney's fee was denied and each party was directed to pay their own costs. Both parties have appealed from a decree based on these findings.

The parties were living in Baton Rouge, Louisiana, when they were married on August 27, 1941. They continued to reside in Baton Rouge until after the first child was born on August 30, 1942. Appellant enlisted in the Coast Guard on October 8, 1942, and was stationed in Florida until he was transferred to the west coast in December, 1943. Appellee and the older child resided with appellant in Florida until he was transferred, when she returned to live with her mother in Baton Rouge.

Appellant was in and out of west coast ports until his discharge from military service on October 25, 1945. He obtained furloughs and visited in Baton Rouge in April, November and December of 1944, and in June, 1945. The parties cohabited as man and wife in April, 1944, although appellee testified that she advised appellant on this visit that she could no longer bear his ill treatment and wanted a divorce. This cohabitation was resumed on the night of November 7, 1944, which was the date of his next visit. Appellant left the following day and spent the rest of his November leave with his parents

who resided near Baton Rouge. He testified that he left at her request and upon her representation that the doctor had advised that she had only a short time to live and that she wanted to spend this time with the child. This was denied by appellee who testified that she could no longer endure his drinking and abusive treatment. This testimony is typical of the irreconcilable conflict in the evidence of the parties as well as that of many of their supporting witnesses who displayed much bias and partisanship in giving their testimony. We agree with the trial court that the character of most of the testimony is such that, "Solomon with all his wisdom would not know just what the truth is."

On her cross-appeal appellee argues that the trial court erroneously denied her prayer for divorce on account of cruel treatment by appellant, it being insisted that her action in refusing to cohabit with him after November 7, 1944, was justified by such treatment. Appellee testified that appellant struck her on several occasions and this testimony was corroborated by her mother and other witnesses. It is true that this testimony, standing alone, might warrant a decree in her favor, but these instances of ill treatment were denied by appellant and his witnesses. We think the preponderance of the evidence supports the chancellor's finding in favor of appellant on this issue, and that it would serve no useful purpose to detail this testimony.

Appellee also contends that the chancellor erred in refusing her prayer for costs and attorney's fee. When the appeal was lodged in this court we directed appellant to pay $50 attorney's fee and costs of printing appellee's brief, and appellant complied with this order. Under our statute (§ 4388 of Pope's Digest, as amended by Act 274 of 1945) the matter of the allowance of attorney's fees and suit money pending a divorce action is in the sound discretion of the court. *Kincheloe* v. *Merriman,* 54 Ark. 557, 16 S. W. 576, 26 Am. St. Rep. 60; *Hodge* v. *Hodge,* 161 Ark. 299, 255 S. W. 1090. Since the trial court correctly found that appellee was at fault in the separation of the parties and denied her prayer for divorce, we cannot say

there was an abuse of discretion in the court's refusal to allow attorney's fee and all costs to appellee. Nor can we say that the trial court was in error in the allowance of only $30 per month for support and maintenance of the two children. It is true that appellant has a good job and, while the allowance may not be termed a liberal one, we are unable to say that it is too small when all the circumstances are considered.

In granting appellant a divorce on the ground of desertion, the trial court made the following finding: "As to the allegation of desertion, she asserts that the reason she wanted a divorce was because she was tired of his cruel treatment, but it is an admitted fact on her part that she made up her mind to divorce him in November, 1944, more than one year before her complaint was filed and more than one year before the cross-complaint was filed. It is undisputed, when all the testimony is considered, that they did not live together as husband and wife after that time, and that was more than a year before the suit for divorce was filed, and under that view, and under the evidence, there is no question but that defendant has established in his cross-complaint the right to a divorce on the grounds of desertion." This finding is fully supported by the evidence.

The real question in the case involves the right to the custody of the three-year-old child. Appellant earnestly insists that the charge of adultery was well established and that this fact alone entitles him to the custody of the older child. Having determined that the charge of desertion made by appellant was well established, the chancellor found it unnecessary to determine whether appellee was also guilty of adultery. The trial court also decided that even though appellee was guilty of some infidelity, such determination would not change the award of custody to the mother in view of the child's tender age and the other circumstances in evidence. While there was some circumstantial evidence tending to show misconduct on the part of appellee, it was stoutly denied by her. Since we agree with the chancellor that the charge, if proved, would not necessarily change the award of

custody in the instant case, we think it would be better for all concerned that the unsavory evidence adduced on this issue be left out of this opinion.

In *Oliphant* v. *Oliphant,* 177 Ark. 613, 7 S. W. 2d 783, upon which appellant relies, this court indicated that it would have changed the custody of an eight-year-old daughter from the mother to the father if the latter had proved the charge of adultery against his wife. However, different results have been reached in other cases where misconduct of the wife has been definitely established, but other circumstances in the case have been held to warrant the award of custody of a child of tender years to the mother. *Longinotti* v. *Longinotti,* 169 Ark. 1001, 277 S. W. 41; *Blain* v. *Blain,* 205 Ark. 346, 168 S. W. 2d 807; *Thompson* v. *Thompson,* 209 Ark. 734, 192 S. W. 2d 223. We agree with appellant that each case must be adjudged on its own peculiar facts and, since no two cases are alike, there is no direct precedent for or against custody in cases of this kind. The child's best interest and welfare is always the primary and controlling consideration. *Kirby* v. *Kirby,* 189 Ark. 937, 75 S. W. 2d 817.

At the time of the trial the older child was only three years of age. Appellant, if awarded custody of the child, has indicated his intention of placing it with his father and mother, who are 78 and 56 years of age, respectively. The grandparents reside on a small farm 21 miles from the city of Baton Rouge where appellant is employed. They are good people and would, no doubt, furnish a good home for the child, but they are practically strangers to him. The child has had the care and attention of appellee since its birth. Several witnesses testified to the good character of appellee and it is undisputed that she has given splendid attention and care to her children who, because of their tender years, need the solicitude and affection of a mother. As pointed out by the trial court, the decree as to custody is only final as to conditions existing at the time of its rendition and may be altered in the future under changed conditions. Because of the child's tender age, we are unwilling to say that

the chancellor erred in awarding its custody to appellee under the conditions existing at the time of the trial.

The decree is accordingly affirmed.

ROBINS, J., dissents.

ROBINS, J. (dissenting). Appellee, who was plaintiff below, admits that, being a non-resident of Arkansas, she came into this state for the sole purpose of instituting a divorce action against appellant, a resident of Louisiana, where she also resided. There is no testimony to show that she ever acquired a domicile in Arkansas. Therefore, the lower court had no jurisdiction of her suit. It is true that in the case of *Squire* v. *Squire,* 186 Ark. 511, 54 S. W. 2d 281, we used language indicating that one who comes into this state solely for the purpose of obtaining a divorce may nevertheless properly institute such a suit here after the lapse of the required time. But, if that opinion means that a party may come into this state without intending to become a resident of Arkansas, but only for the purpose of utilizing our facile machinery for destruction of the marriage status, we ought to overrule it now for the excellent reasons set forth in Justice Knox's dissenting opinion in the case of *Tarr* v. *Tarr,* 207 Ark. 622, 182 S. W. 2d 348.

Since, as I view the record, the lower court had no jurisdiction of the appellee's complaint, because she was a non-resident, it could not acquire jurisdiction of the cross-complaint of appellant, who was likewise a non-resident. "It is generally held that a non-resident defendant may obtain a decree for divorce upon a cross bill only in those cases where the plaintiff has satisfied the residential requirements necessary to invest the court with jurisdiction." 17 Am. Jur. 288.

The question as to custody of the child in the case at bar was merely incidental to the divorce proceedings in which its parents were involved. We do not have here a habeas corpus proceeding involving custody of a child found in this state; and, as the lower court did not have jurisdiction of the divorce proceedings it should not

have assumed jurisdiction of any phase of this domestic dispute of two residents of a sister state.

In my opinion this entire controversy ought to be dismissed for want of jurisdiction, and these parties should be remitted for their relief, if they are entitled to any, to the courts of their domicile. We should not, by decision of this court, contribute to making Arkansas a sort of laundry for dirty matrimonial linen from other states.