GREGORY *v.* JACKSON.

4-8329                                         205 S. W. 2d 471

Opinion delivered November 17, 1947.

*Chas. F. Cole,* for appellant.

*T. J. Carter* and *W. M. Thompson,* for appellee.

SMITH, J. This appeal involves the custody of a girl 9, and a boy 6 years of age. It originated in a suit for divorce, and the custody of these children, filed in the circuit court of Yamhill county, Oregon, in August, 1945. Howard Ralph Jackson, the father of the children, filed suit against Lilly F. Jackson, now Gregory, his wife, the mother of the children, in which he alleged the infidelity of his wife, and her illicit relations with one Charles Gregory. It was alleged that Mrs. Jackson had told her husband that she no longer loved him, but that she did love Gregory, and that she had admitted her illicit relations with Gregory, and her intention to continue those relations.

No answer was filed and a decree was rendered September 15, 1945, awarding the husband a divorce and the custody of the children. The testimony on which the decree was rendered does not appear in the record now before us, but presumably it established the allegations of the complaint.

On November 7, 1945, Mrs. Jackson filed a motion to set aside this decree, to reopen the case, and to have the custody of the children awarded her. It was alleged that Mrs. Jackson had employed an attorney to represent her for the agreed fee of $100, of which she had paid $80, but the attorney failed to perform the duty for which he had been employed. The motion was heard on affidavits which were to the effect that the husband had no just cause for divorce, and was the party at fault in their marital troubles, and that the attorney had failed in his duty to her. Opposed to these affidavits was one by the attorney Mrs. Jackson had employed to represent her, in which he stated that he did not appear and defend because Mrs. Jackson directed him not to do so. She was aware that the suit involved the custody of her children, and he admonished her that if she did not defend the suit she would later regret her failure to do so.

The motion to reopen the case was heard by the court on December 1, 1945, and taken under advisement until January 26, 1946, at which time a decree was entered refusing to reopen the case, or to modify the original decree rendered September 15, 1945.

On December 23, 1945, Mrs. Jackson filed another petition to modify the original decree by awarding her the custody of the children. This motion was supported by affidavits purporting to show that she was a fit and proper person to have the custody of the children and that Jackson was not. These allegations were all categorically denied by Jackson at the trial from which this appeal comes. A summons issued on this last mentioned petition which was never served, and there was testimony tending to show that Jackson was evading service, whereupon the court ordered the publication of a warning order to require Jackson to appear and show cause why the custody of the children should not be changed and given to Mrs. Jackson. This warning order was published, the date of the first publication being March 21, 1946, and the fourth and last publication was on April 11, 1946.

The original decree of September 15, 1945, had awarded the children to Jackson without restrictions as to their place of residence, and on January 10, 1946, Jackson brought the children to Sharp county, in this state, where he had been reared and where his father and mother resided, and he testified at the hearing from which is this appeal that he did this with the intention of making Sharp county his future and permanent home. He had gone with his wife after the outbreak of the war to the state of Oregon, where both had secured employment in a war plant.

A copy of the motion to vacate the original decree was mailed to and received by Jackson, which he took to the attorney he had employed to represent him in his original suit, and he was advised by the attorney that he might appear if he wished, but that he was not required to do so, as the letter was not a legal summons and a letter to that effect, written by the attorney, was offered in evidence at the hearing from which is this appeal. Jackson did not appear and on April 22, 1946, the petition was heard on the affidavits which had been filed, and an order was entered on that date vacating the original decree in regard to the children, and awarding Mrs. Jackson the custody of the children. Armed with a copy of this decree Mrs. Jackson came to Sharp county on January 29, 1946, and demanded custody of the children. She was accompanied by Gregory, the man with whom, according to the allegations of the complaint in the original suit, she had been criminally intimate. She appears to have married Gregory immediately after the rendition of the April 22, 1946, decree, and we will hereinafter refer to her as Mrs. Gregory.

Pleadings in the Sharp county chancery court were filed by Mrs. Gregory alleging her right to the custody of the children under the April 22, 1946, decree, a certified copy of which was filed, and the court gave the parties an immediate hearing. After hearing such testimony as the parties wished to offer, the court ordered a recess and suggested that the parties confer and see if they could not agree upon an order to be entered. After this

conference was had the court entered an order signed by the Chancellor and the attorneys for the respective parties, reading as follows:

"In the case of Lillie Frances Jackson Gregory, the plaintiff, versus Howard Ralph Jackson, defendant, case No. 156. This cause coming on to be heard, both parties being present in person, and Sidney Kelly, attorney representing the plaintiff, and Thomas J. Carter, attorney representing the defendant, after much testimony was taken in the case, all parties having agreed to an order of the court which is as follows:

"The court orders that the custody of Nita June Jackson, age nine, and Howard Ralph Jackson, Jr., age six years, be awarded until further orders of this court to the parents of the defendant, to-wit: Mr. and Mrs. R. W. Jackson, who own their own home, approximately one and one-half miles from Evening Shade; that the defendant shall pay to Mr. and Mrs. R .W. Jackson whatever is reasonable or is demanded by Mr. and Mrs. R. W. Jackson.

"It is further ordered that both the plaintiff and the defendant may visit with said children at any and all reasonable times, but at all times under the control of these custodians that neither party shall take the children outside the jurisdiction of this court, and if either one shall do so the person shall be in contempt of court and shall be punished accordingly except as follows: If either the father or the mother at any time desires to take the children outside of the State of Arkansas for any reasonable period of time not exceeding thirty days, either may do so, provided such party shall deposit with the Clerk of this court the sum of three hundred dollars as a guarantee that said children will be returned within thirty days, otherwise said money may be used by Mr. R. W. Jackson for the purpose of returning said children to the jurisdiction of said court, and the offending parties will likewise also be in contempt of court.

"The court finds that there is some testimony indicating that the parents might be likely to prejudice the

children against the other: the court orders both parents and the custodians to refrain from doing anything to prejudice those children against either parent and the court if convinced later that they are doing this will take such actions into consideration and will rule on same at that time.

"Wherefore: These findings and orders, are so considered, order and decreed, on May the 7th, 1946, at Evening Shade, Arkansas, in open court at a regular day of the chancery court for the Southern District of Sharp county, Arkansas." This order was made and entered May 7, 1946.

Apparently satisfied with this order Mrs. Gregory returned to the State of Oregon with her new husband and Jackson also returned to that state for the purpose, as stated by him, of disposing of property there owned by him, including a home, and while so engaged he secured employment in Oregon, but his children remained in Sharp county with his parents, where he had shipped his household effects.

On December 4, 1946, Mrs. Gregory reappeared in Sharp county with her husband and a new attorney and filed a petition praying the court to amend and modify the order of May 7, 1946, and award the custody of the children to her. This hearing was continued from time to time until January 28, 1947, when a decree was entered refusing to change the custody of the children, but before making that order, and at the conclusion of all the testimony, the court remarked: "The Court denies plaintiff's petition for custody of the children, and the Court at this time denies defendant's petition for a change in custody of the children for the reason that the Court thinks it would be better before making a change in custody, if ever, to give all parties full opportunity to be heard."

At this hearing Mrs. Gregory offered testimony to the effect that she and her present husband, who testified that he would be pleased to have the children in his home, could better take care of the children and afford them

better educational facilities than could their father. Jackson had also remarried and Mrs. Gregory insisted that his present wife is too young to have the custody of the children. Jackson testified that he had acquired a house, and would establish a home in Sharp county, where he had secured permanent employment, and his wife testified that the children were very affectionate to her and that she would be pleased to have them in her home. Jackson filed a response to the motion to vacate the decree, in which he alleged that Mrs. Gregory was not a proper person to have the custody of his children especially since she had married the man who had invaded and broken up his home. This was a renewal of the allegation upon which he had obtained his divorce and the award of the custody of the children, which the Oregon Court had refused to vacate or modify after a full hearing with all parties present as stated above.

We do not compare or discuss the relative advantages which could be afforded the children further than to say that we find no abuse of the court's discretion in refusing to vacate the decree of May 7, 1946, so far as the welfare of the children is concerned.

On January 28, 1947, the court entered the decree from which is this appeal refusing to award the custody of the children to Mrs. Gregory. For the reversal of this decree it is insisted that the full faith and credit which the Constitution of the United States requires the courts of one state to give the judgments of another state had not been given to the Oregon decree of April 22, 1946, and further that that decree remains effective until modified by the court which rendered it.

Under the laws of this state and the state of Oregon, a decree awarding or changing the custody of children is a final decree from which an appeal may be taken, but it is not the law of either state that such decree is final in that it may not be subsequently modified where conditions are changed, and the welfare of the child requires. Nor is it the law that such a decree may be modified only by the court which rendered it. The recent opinion of the Supreme Court of the United States in the

case of *People of State of N. Y. ex rel Halvey* v. *Halvey,* 330 U. S. 610, 67 S. Ct. Rep. 903, is conclusive of this question.

There the custody of an infant had been awarded to a mother under the decree of a Florida Court. The father took the child to New York and the mother followed and brought habeas corpus in the State of New York to recover possession of the child. The decision of the Court of Appeals of New York was reviewed on *certiorari* as presenting a problem under the Full Faith and Credit Clause of the Constitution, § 1, Art. V. After stating that the Florida court had the jurisdiction to modify its decree, the court said: "So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do," and further "that the state of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the state where it was rendered."

The Supreme Court of Oregon held in the case of *Neil* v. *Neil,* 112 Ore. 63, 228 Pac. 687, that the court had no jurisdiction to enter a final and irrevocable decree concerning the custody of the minor child of divorced parents, and that an order with respect to the custody is never final in the sense that it is unchangeable. In the case of *Saltzman* v. *Saltzman,* 154 Ore. 178, 58 Pac. 2d 617, it was held that whenever it is shown to the court that a change of custody is in the interest of the child's welfare, the court may in its discretion modify a previous decree. We have a number of cases in this state to the same effect.

Without deciding whether the Circuit Court of Oregon acquired jurisdiction to render its decree on Jan. 22d, above referred to on constructive service, after the children had been brought into this state to become with their father permanent residents thereof, a right the father had as the original decree granting the divorce and awarding the custody of the children imposed no restrictions as to residence or removal of the children, we hold that the decree from which is this appeal is valid,

and entitles the father of the children to their custody until and unless it is vacated or modified by a subsequent decree.

Even though the last decree of the Circuit Court of Oregon is valid it cannot be said that there has been no such change in the conditions of the parties since its rendition as would authorize a change of custody contrary to the provisions of that decree, which was rendered upon a motion filed by Mrs. Gregory as Mrs. Jackson. It appears that immediately subsequent to that decree Mrs. Gregory married the man who had invaded Jackson's home as alleged in the original divorce suit, and we think it neither fair to the father or to the children, nor to their best interest to have them transferred into the environment of Gregory's home.

The decree must, therefore, be affirmed, and it is so ordered.