HIGGINBOTTOM *v.* WILLIFORD.

4-9194                                       230 S. W. 2d 26

Opinion delivered May 22, 1950.

*T. J. Carter* and *W. M. Thompson,* for appellant.

*Harry Ponder,* for appellee.

ED. F. McFADDIN, Justice.    This is a suit between parents involving the custody of their daughter born April 8, 1947.    The mother, appellee, seeks to obtain the custody of the child.

The parents were divorced on January 15, 1949, and the mother consented to a decree which awarded the custody to the father.    The decree recites:

". . . there has been one child, a girl, born to this union, whose custody is now with the plaintiff, . . . a fit and proper person to have the care and custody of said child; it appearing to the Court that said defendant is not asking its custody, and it further appearing to the Court that said plaintiff has kept and cared for it all the time, and that he has arrangements made with his parents for its home, where he will support and care for it. . . .

"It is further considered, ordered and decreed that said plaintiff, H. B. Higginbottom, shall have, and he is

hereby awarded, the full care, custody and control of the said Betty Jo Higginbottom, but the defendant shall have the right to visit and see the said Betty Jo Higginbottom at stated and reasonable times. The Court retains jurisdiction only for the purpose of adjusting the matter of the custody and support of the minor child, Betty Jo Higginbottom." [1]

The divorce decree was granted on January 15, 1949; and ten days later the mother married another man and is now Mrs. Williford, the appellee. On June 3, 1949, she filed petition to obtain the custody of the child; and in the petition she claimed that she has remarried, and now has a suitable home for the child who would be properly cared for, if the custody be awarded the mother.

Appellee was the only witness testifying in support of her petition. A most glaring omission is the failure of her present husband—George Williford—to testify that he wanted the child in his home, and would be good to the little girl and assist in supporting her. The appellee has no source of income, and if she had the child, then George Williford would have to provide the home, food, and clothing; yet he did not testify in corroboration of his wife's statement, even though the evidence strongly assailed the environment in which the mother would raise

---

[1] The foregoing decree was based on the husband's *corroborated* and then *undisputed* testimony:

"In about three weeks after our marriage she commenced leaving home, going away and staying for several days at a time. Sometimes she would stay for weeks before returning home. There would be no trouble—she would just leave out. Sometimes I would be there when she left, and sometimes I was not at home. When I would find her, she would be out with questionable parties, making parties of all kinds, drinking and carousing around, here and there. I would try to get her to come home, settle down and help me take care of the home and make a home what it ought to be; and she would not come in until she took a notion. That kept up until about three or four weeks before our baby was born, which was on the 8th day of April, 1947. Then in about four weeks after its birth she commenced leaving the home and going places, just as she had before, and kept it up until I quit, on the 11th day of November, 1948. When she would come in home she would stay at home maybe for a week, but never stay at home for more than two weeks at a time, until she would take off again.

"Q. Where would the baby stay when she would leave out or go away?

"A. She always left the baby with me. We are raising it on a bottle and my mother has helped me out a good deal in taking care of it. She always left it at home when she took off."

the child. On this latter point, George Williford's mother testified to the effect that he and the appellee were not suitable persons to have the child.

On the other hand, the child's father and the paternal grandparents (who now have the child) were supported by witnesses to the effect that the child is now in a good Christian home and being properly cared for in every way. On this point the learned Chancellor said:

"There is no question in the Court's mind about Cleo Higginbottom and his wife having a good Christian home, and the Court knows that it would be a fine place for the child to stay; and the Court rather feels that the child might get better treatment and be raised more properly if she is left there than if she is left with her mother; but the child is only two years and two months old, and, of course, the presumption is great that the mother ought to have the child."

It is unnecessary to detail all the evidence in this case, and also to discuss and delineate our child custody cases, a few of which are: *Myers* v. *Myers,* 207 Ark. 169, 179 S. W. 2d 865; *Gregory* v. *Jackson,* 212 Ark. 363, 205 S. W. 2d 471; *Marr* v. *Marr,* 213 Ark. 117, 209 S. W. 2d 456, and *Thompson* v. *Thompson,* 213 Ark. 595, 212 S. W. 2d 8. In the case last cited Mr. Justice ROBINS stated our holding in this language:

"While any order as to custody of a child is subject to future modification by the court making it, the rule, uniformly adhered to by us, is that before such modification may be made it must be shown that, after the making of the original order, there has been such a change in the situation as to require, in the interest of the minor, the change to be made, or it must be shown that material facts affecting the welfare of the child were unknown to the court when the first order was made."

Even though the child is of tender years, still we hold that the custody should not be awarded the mother under the record now before us. There has been no such change in circumstances as make it for the best interests

of the child to change the custody from that contained in the decree of January 15, 1949.

Therefore, the decree of the Chancery Court (of July 26, 1949) is reversed, and the cause is remanded, with directions to deny the appellee's petition for change of custody and to leave in full force the decree of January 15, 1949.

HOLT, J., dissenting. This action concerns the custody of a little girl approximately three years of age. The divorce is not now an issue. At the time the divorce decree was rendered, this child was less than two years of age.

We have frequently announced the rule, involving child care and custody, that the primary consideration must be, and is, the welfare of the child. In the present case, there is no evidence or contention that the young mother is morally unfit to have the care and custody of this little girl of such tender years, and as I construe our rule, in all such cases, it is that the child's welfare would be best served in its mother's care and custody.

In one of our most recent cases, *Aucoin* v. *Aucoin*, 211 Ark. 205, 200 S. W. 2d 316, where there was evidence tending to show immorality on the part of the mother, yet we there held that the custody of a three-year-old girl should be given to the mother on account of the tender age of the child.

In *Andrews* v. *Andrews*, 117 Ark. 90, 173 S. W. 850, where the evidence showed the mother to have been guilty of immorality and the husband "a man of good character and able to suitably provide for his child, and to have been without fault in his domestic troubles," however, this court affirmed the action of the lower court in awarding the care and custody of a little girl, 4 years of age, to the mother. We there said: "A sufficient reason here for not taking the child from the mother and delivering it to the father is tender age of the child, who is shown to be only four years old." It will also be noted that at the time the decision was rendered, February 15,

1915, the law, in effect, was that "the father is the natural guardian of his child, and is *prima facie* entitled to its custody."

At the present time, however, the law provides that "there shall be no preference between the husband and wife as to child custody," Ark. Stats. 1947, § 51-106.

We held in the Andrews case above: (Headnote 2) "The custody of a child of tender years will not be taken from the mother and awarded to the father, although the father secured a divorce for cause on the wife's part, where the wife and mother was living with her father, who was able to provide for her and the child, and where she was, under the evidence, a suitable guardian for the infant," and in *Wimberly* v. *Wimberly,* 202 Ark. 461, 151 S. W. 2d 87, we held: (Headnote 2) "Where appellant and appellee having a nine-year-old son separated and the evidence showed both were intelligent, earners and of good moral character, and both were capable and able to rear and educate the child, held that during the period of tender years it was to the best interest of the child that its mother should have the custody of it," and in the body of the opinion, said: "There is nothing in this case from which it can definitely be said that it is to the best interest of the child for the mother to have custody of it, save and except the humanitarian rule which has most generally been adopted by the courts that during the period of tender years the child should be left in the care of the mother."

It is my opinion, therefore, that the findings and decree of the Chancellor should not be disturbed and should be affirmed.