TASSIN *v.* REYNOLDS.

260 S. W. 2d 462

Opinion delivered June 29, 1953.

Rehearing denied October 5, 1953.

*Dinning & Dinning,* for appellant.

*James P. Baker* and *A. D. Whitehead,* for appellee.

GEORGE ROSE SMITH, J. This is another phase of a long dispute over the custody of Bobby Joe Reynolds, now twelve years of age. We need not restate those facts contained in earlier opinions in the case. 209 Ark. 890, 192 S. W. 2d 984; 212 Ark. 1020, 208 S. W. 2d 987. When the case was last before us in 1948 custody was awarded to the mother, Mrs. Tassin, for the nine school months of each year and to the father for the three summer months.

In 1951, upon Reynolds' petition for a modification of the order, the chancellor continued in force the divided custody we have mentioned. In that order, which was not appealed, the court found that both parents and both step-parents were responsible people capable of directing the child's life. A year later, in September of 1952, Reynolds filed the present petition for a modification of the earlier order. After a hearing the chancellor reversed the existing arrangement by ordering that Reynolds have the boy at West Helena during the school term and that Mrs. Tassin have him at her home in Louisiana during the school vacation.

Although Reynolds' petition avers a change of conditions since the court's order a year earlier, there is little proof to sustain the allegation. About the only change is in the attitude of the child, who testified that he is mistreated when living with his mother and that he prefers to live with his father. At the close of the testimony the chancellor, in a statement addressed to the stepfather, Tassin, expressed the view that Bobby Joe has become unmanageable. "He apparently has turned his back on his own mother like Reynolds has turned his on his own mother. . . . I think it is to your interest not to take this boy down there with his attitudes. Somebody is making a liar out of the boy."

We agree with the chancellor's point of view but not with his answer to the difficulty. In 1951 the child testified that he preferred to live in Louisiana, that he had more playmates there, and that he was given more spending money. A year later, at the hearing below, the child repudiated his former position and gave substantially the same reasons for wanting to live in West Helena. It is perfectly evident that, perhaps abetted by his parents, this lad has learned to play the wishes of one parent against those of the other, with little regard for the truth.

We think this unfortunate situation, if it can be remedied at all, can be corrected only by terminating the division of custody that has resulted in this child's having been the subject of bitter controversy during his whole life. When this petition was filed Mrs. Tassin was entitled to have the child for nine months of each year, and, there being no substantial change of conditions, we think it best to award her the boy's exclusive custody, with Reynolds to have reasonable visitation privileges. In this decision we are influenced by Mrs. Tassin's steadfast devotion to her son during the long course of this litigation; see particularly our first opinion. Reynolds, on the other hand, seems unable to get along well even with his own family. His mother has twice testified against him in the case, and at the hearing below his sister also appeared as a witness for Mrs. Tassin. Inasmuch as the Tassins state that they are well able to support the child, Reynolds is relieved of any obligation to make payments for the child's maintenance, subject to the chancellor's power to modify the order should conditions change.

The decree is reversed and the cause remanded for the entry of a decree consistent with this opinion. Lest there be uncertainty about the right of custody before this court reconvenes in the fall, the mandate will issue immediately, without prejudice to any petition for rehearing that may be filed.