CUSHMAN *v.* LANE.

5-649                           277 S. W. 2d 72

Opinion delivered April 4, 1955.

*W. J. Schoonover* and *James A. Robb,* for appellant.

*John L. Bledsoe,* for appellee.

MINOR W. MILLWEE, Justice. The question for consideration is whether, under the circumstances presented,

the custody of a 12 year old boy should be taken from his stepmother against his wishes and awarded to his mother who willingly surrendered custody to the child's father over 6 years ago.

Appellant, Euhl Lane Cushman, and Harry Lane were married at Reyno, Arkansas, where they lived until 10 years ago when they moved to Rockford, Illinois. Two children were born to said marriage, Donald Eugene whose custody is involved here and Charles Ray, now 8 years of age. When the parents separated in 1948 Harry Lane returned to Arkansas with Donald Eugene and the younger boy remained in Rockford with appellant. On December 23, 1948 appellant obtained a divorce from Harry Lane in Illinois and the decree was silent concerning the custody of the two children. The next day appellant married Clarion Cushman and they still reside in Rockford, Illinois, with Charles Ray, one child of their own and three children of Mr. Cushman by a former marriage who are 11, 12 and 14 years of age. A fourth child of Cushman's first marriage lives with his mother.

Harry Lane married appellee, Juanita Lane, in January, 1949, and they resided in Randolph County, Arkansas, most of the time until his death on July 22, 1954, after a lingering illness with cancer. Donald Eugene continued to live with them. Two boys and a girl were also born of their marriage and appellee was expecting a fourth child at the time of the trial in September, 1954. Charles Ray has continued to live with appellant and her present husband, and neither parent sought any change in the custody apparently agreed upon in 1948 until after Harry Lane's death. Appellant visited Donald Eugene a few times on annual vacation trips to Arkansas for visits with other relatives and has sent him a few small gifts. After the death of his father Donald Eugene preferred to remain with his stepmother and declined to voluntarily return to Illinois with appellant. On August 11, 1954, appellant instituted the instant petition for writ of *habeas corpus* against appellee seeking custody of the child.

In denying the petition the Chancellor made certain findings and conclusions as follows:

"Viewed in the light of the most tender of human emotions of those having claim upon him, while it isn't a completely normal situation, still, the little boy has come to regard the home of his father as his own home. He is not quite old enough to select his custodian, but he seems to be an unusually bright boy, and he has expressed a desire; and to take him out of this home where he has pitched such deep roots and to pluck him from the home where he has become adapted to the surroundings and where he feels secure in the love of those with whom he has lived and place him in a home strange to him, even though he might have more of the physical comforts of life and the love of his natural mother, would fail to compensate for the love that now exists between him and the one who has cared for him throughout his tender years and the one he has grown to love and respect.

"Even though the physical surroundings and also the financial standing of the two homes may not be comparable, still, there seems to be no argument concerning the stepmother, from those who know her well, as to her ability and desire to support, educate and care for him and train him in the right way morally and rear him as a useful, upright citizen. And with no intention of casting criticism on the natural mother for having achieved and attained a home where there are apparently better physical surroundings and a brighter financial picture than there are in this home where her older son is being reared, still, I will say that it is not always the superior physical surroundings that get the best results. Sometimes I think it is of benefit for boys to come up in hard surroundings or circumstances. But to look, as a matter of fact, at the home of the natural mother, we find that there are already seven people there. This man, the husband of the petitioner here, has all the earmarks of a successful business man, intelligent, clean, energetic, and progressive; but he has

a number of persons already looking to him for support, education and training.

"It will be only a brief time until Donald Eugene here may elect his own custodian if he so desires; and until that time arrives I believe it will be best that he be left in the home where he has become so deeply attached to all those who are now left there; and the petition will be denied. That ruling will be subject to the right of visitation. The natural mother must have the right of visitation; and if I find that is being denied or made difficult in any way; the court might find it necessary to change the custody."

In urging a reversal appellant argues that the court's findings are in conflict with that judicial policy which extends a preferential right of custody to the natural parent unless he or she has abandoned the child or manifested such cruelty or negligence as to amount to parental indifference. It is also insisted that appellant's home accords the child a superior environment and that the chancellor gave too much weight to the child's own wishes in holding otherwise. It is true that the rights and feelings of a natural parent are to be considered and his preferential right to custody will be recognized unless circumstances are such as to render such custody inimicable to the best interests of the child. *Griffen* v. *Newcom*, 219 Ark. 146, 240 S. W. 2d 648. The paramount and controlling consideration here, as in all custody cases, is the child's best interest and welfare. Each case presents a different factual situation and no hard and fast rule can be laid down in determining what is best for the permanent welfare of the child. *Kirk* v. *Jones*, 178 Ark. 583, 12 S. W. 2d 879. As the textwriter states in 43 C. J. S., Infants, § 7b: "The controlling consideration in determining the custody of an infant is the best interest and welfare of the infant, that is, the physical, intellectual, moral, and spiritual well-being of the child, and to this all other considerations are subordinate."

As the Chancellor indicated, appellant and her husband probably are in position to furnish the child with

superior material and physical advantages. On the other hand a preponderance of the evidence supports the conclusion that the intellectual, moral and spiritual well-being of the boy will be better served by leaving him with appellee. The child is an important member of a family to which he is well adjusted. He attends church and church school regularly and had not been absent from school during the past three years. Strong ties of affection have been allowed to develop between the child and other members of the family during the 6 years that have elapsed since appellant voluntarily surrendered custody to the father. Appellee has given him all of a mother's care and little less than a mother's love. The risk involved in suddenly severing this happy relationship just as the child is entering a critical adolescent period and placing him in a strange environment where moral and spiritual values have not been emphasized is quite apparent. The Chancellor's conclusions are supported by a preponderence of the evidence, and the decree is affirmed.