HOLT *v.* HOLT.

5-1307                                     305 S. W. 2d 545

Opinion delivered October 7, 1957.

*Jack Holt, Sr.,* and *John F. Park,* for appellant.

*Tommy H. Russell* and *Ruby E. Hurley,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal seeks to reverse the decree of the White County Chancery Court, wherein Mildred Holt, appellee, was awarded the custody of the two minor children of appellee and appellant, Ernest M. Holt, Jr. Appellant, for reversal, alleges one point, namely "The order of the lower court

awarding the custody of the minor children to appellee is contrary to the well established principle, constantly adhered to by this Court, that the first and paramount consideration of the Court is the security, well-being and happiness of the children.''

To briefly summarize a history of the case, Mildred Holt, on April 9, 1951, was granted a decree of divorce from Ernest M. Holt, Jr., by the White Chancery Court, and was given custody of the minor children, Linda Kay, then 6, and Larry Wayne, then 4, with visitation rights reserved to Mr. Holt. The decree provided that Holt should pay the sum of $12.50 per week for maintenance of the children. Mrs. Holt, sometime thereafter, moved to Little Rock, and obtained a job at the Westinghouse Corporation, earning approximately $50.00 per week. The children, together with an older child of Mrs. Holt's by a previous marriage, were placed in the Elizabeth Mitchell Children's Home, due to the inability of the mother to take care of them while working. They remained in the Home for a period of about three years, with the mother taking them to her home each weekend. During this period, the cost of keeping the children in the Home was largely borne by the mother. According to the evidence, the father, who had remarried in the meantime, contributed almost nothing for approximately two years. On November 28, 1955, appellee was given judgment against appellant for arrearage in child support payments in the sum of $1,174.09, and the court decreed that no further hearing be held on child custody until said amount was paid. Subsequent thereto, Mr. Holt filed a motion asking that this judgment be set aside; that the divorce decree be modified by granting him custody of the children, and setting up that he had been hospitalized and unable to work, as the reason for his failure to make the payments to Mrs. Holt. The judgment was set aside and appellant's motion was set down for hearing. Upon the hearing, the court found Mr. Holt's arrearage to be $1,274.09, and ordered that he pay $100 on such arrearage and $50 to Mrs. Holt's attorney. The order further provided that Mr. Holt's motion for custody not be heard until the said sum of $150, as

well as any child support payments accruing following the order, be paid. Subsequent thereto, Mrs. Holt entered the State Hospital for Nervous Diseases, and stayed there until July 31, 1956. On May 11, 1956, the original decree was modified to the extent that Mr. Holt was authorized to have custody of the children on certain weekends, and when the school term ended, Mr. Holt took his children from the Elizabeth Mitchell Home, and carried them to his own home at Kensett, White County. They remained there until the present hearing, which was held on September 20, 1956, with the final order being entered on November 20, 1956. This order dismissed Mr. Holt's petition for permanent custody of the children, and restored to Mrs. Holt such custody; provided for judgment against Mr. Holt for Mrs. Holt in the sum of $1,274.09, allowed an additional fee of $150 to her attorney, directed the continuance of the $12.50 per week for maintenance of the children, and granted Mr. Holt visiting privileges on certain weekends of each month. From this final order comes this appeal.

It is conceded by counsel for both parties that the controlling consideration, in determining who shall gain custody, is the welfare of the children. As has been previously stated by this Court in *Cushman* v. *Lane,* 224 Ark. 934, 277 S. W. 2d 72, "* * * The paramount and controlling consideration here, as in all custody cases, is the child's best interest and welfare. Each case presents a different factual situation and no hard and fast rule can be laid down in determining what is best for the permanent welfare of the child. * * *"

In contending that he is entitled to the custody of the children, appellant states that he and his present wife live at Kensett, where both are employed, working five days a week from 7 a. m. until 4 p. m. He earns $100 per month, and his wife earns from $200 to $250 per month. They own their home, fully paid for, which, according to the evidence, was purchased about two years before the hearing. A new Pontiac automobile has been purchased, with payments of $70 per month, and a television set, requiring payments of $5 per week. The present Mrs. Holt states that she is willing to help provide

for the children, and that she and appellant have an income of $200 to $250 per month to pay ordinary expenses over and above the payments heretofore mentioned.

When school commenced, the children enrolled in the Kensett school, where their grades were better than while at Little Rock. At the end of the school day, the children returned to the home of their grandparents (who lived a few blocks from appellant) and remained there until their father had returned home.

Appellant admits that he did not make his support payments as required, but states that he has "been sick quite a bit of the time" with an ulcerated stomach, and also had injured his hand in a saw, which prevented, and still prevents, his working full time.

The mother, Mildred Holt, was discharged from the hospital, as competent, on July 31, 1956. She was to resume work at Westinghouse the day following the present hearing with an approximate income of $50 per week, and had obtained an apartment in North Little Rock, large enough to accommodate the children (four rooms, bath, and back porch) at the rental of $55 per month, including utilities. She expected to work the day shift from 7 a. m. until 4 p. m., in which case she would return to the apartment soon after 4 p. m. to be with the children. Her eldest daughter was also of sufficient age (14) to look after the two younger children until her return. She testified that, if she were placed on the night shift at Westinghouse, the landlady and her husband had agreed to look after the children until she returned from work.

Admittedly, it is difficult to determine which parent should have custody, for it is not easy to ascertain which would better promote the children's welfare. While certainly we would not deny appellant the custody of his children because of his failure to comply with the prior maintenance orders of the court, (if we were convinced that their welfare would best be served by being placed with him) still we feel that the evidence of his irregular payments, including numerous months in

which no payment at all was made, is relevant evidence touching upon the question of appellant's affection and regard for the children. Though perhaps unable to fully comply with the maintenance order of the court at all times, nonetheless, we feel that some amount could have been given the children for their needs. This feeling is strengthened by the fact that Mr. Holt and his present wife were able to purchase a home during this period of time.

Also, Mrs. W. D. Thomas, superintendent of the Elizabeth Mitchell Children's Home, testified that during the approximate three year period the children were in the home, she only saw the father once. In reply to the question of counsel: "Q. Did he show any interest in the children to your knowledge? A. Not any at all."

It may well be that from a financial point of view, the interests of the children would be best served by placing them with their father. But we do not conclude that the well being of a child is governed entirely by the amount of money that is spent upon him. Other considerations are more important. That this mother loves these children devotedly is not questioned; that she has provided to the best of her ability is likewise unquestioned; nor have her morals and character been brought into issue. In short, if custody should be placed in the father, it would mainly have to be on the basis that Mr. Holt and his present wife are better able financially to take care of these children than is appellee; or perhaps, we should say that Mr. Holt's present wife is better able to take care of them, since the bulk of the income is derived from her earnings. In regard to appellant's argument that appellee lacks stability, (referring to her confinement in the State Hospital) the evidence reflects she is presently able to manage her affairs. It may well be that the strain of looking after the needs of three children, with inadequate income, and insufficient help from the father, could have contributed to appellee's condition. Prompt remittance by Mr. Holt of his monthly support payments will serve to supplement the income of the mother, thus mitigating the needs of the children, and lessening the strain on the mother.

As stated, matters of custody are difficult matters. We recognize there is something to be said for both sides in the instant litigation. The Chancery Court has had these parties before it on several occasions, and has had the opportunity to observe their attitude toward the children, their interest in, and apparent affection for, same. Under the proof before us[1], we are unable to say the court erred in placing custody in the mother. Fortunately, in custody cases, the court retains jurisdiction, and if future developments should indicate that a change of custody would be desirable, and for the best interests of the children, the Chancery Court is vested with full authority to revise its orders.

Affirmed.

Justice HOLT not participating.

---

[1] The mother's plans for work and care of the children apparently were effected, as the hearing was conducted on September 20, 1956, but the decree was not entered until November 20, 1956.