Sindle *v.* Sindle.

5-1584                                    315 S. W. 2d 893

Opinion delivered June 16, 1958.

[Rehearing denied September 29, 1958.]

*Paul K. Roberts,* for appellant.

*W. C. Medley,* for appellee.

Carleton Harris, Chief Justice. This is a child custody case. Appellant, Dixie Sindle, and appellee, Charles L. Sindle, were married January 14, 1955. On August 10, 1955, a child, Charles Randle Sindle, was born. Appellee was granted a divorce on October 17, 1955; custody of the child was given to appellant, and appellee was directed to pay the sum of $40 per month for child support. The order further provided appellee should have the right to visit the child ''and when it became older, to have it visit him.'' On July 9, 1957, Mr. Sindle filed a petition for modification of the decree, alleging that he had never been allowed to visit the

child or have the child visit him, asked that he be granted the custody of Charles Randle for not less than one-half the year, and that the child support payment be reduced to $20 per month during the period in which the child remained in the custody of appellant.

At the conclusion of the hearing on such petition, the court granted appellee the custody of Charles Randle during the months of March, July and November, for the years 1958 and 1959, and reduced the support payments from $40 per month to $35 per month for the remaining 9 months of each year. From such action of the court, comes this appeal.

As has been so often stated by this Court, the paramount and controlling consideration in all custody cases is the child's best interest and welfare. *Cushman* v. *Lane,* 224 Ark. 934, 277 S. W. 2d 72. *Holt* v. *Holt,* 228 Ark. 22, 305 S. W. 2d 545. The proof shows that appellee is an itinerant construction worker, presently located in Senatobia, Mississippi, though he claims Hampton, Arkansas, as his legal residence. Subsequent to the divorce, he married again on January 31, 1957. His present wife is 18 years of age. Appellant has not remarried, is unemployed, and lives with her parents.

Appellee contends that appellant has deprived him of his right of visitation with the child. According to the evidence, he has gone to the home where she resides four or five times, the last occasion being about a year before this trial, for the purpose of visiting his son, and appellee refused to let him take the child away from the house, and according to his testimony, took it into another room. The mother contends that she is perfectly willing for Mr. Sindle to see and visit with the child, but that on the occasions of his coming to the home, he has been drinking, and at times has come to the house after the family had retired for the night; that she would not permit visitation under those circumstances. This testimony was corroborated by her father. The proof shows that appellant had gotten behind with his child support payments, and Mrs. Sindle had had him arrested, following which, no further visits

were made. At the present time, he is current in his payments.

It is contended that appellant leaves the child with her parents, and does not stay with it. After a close search of the record, we are unable to find the basis for this contention. The only testimony that even slightly indicates such a fact, was given by appellee.

"Right after the baby was born I could go over. Not long after she went to El Dorado and stayed a good while. Then it started raining, and I couldn't keep up with the payments. She had to leave El Dorado and come back home."

Further:

"You said something about Dixie wanting to take some kind of trip, what do you mean by that?

A. Every time she gets a check she goes somewhere. The last one, she went up to Booneville.

Q. Do you know what she was doing up there?

A. No, I don't, because I wasn't up there with her. I have a bud up there in the hospital. She went in there to see him. That might have been what she went for, I don't know."

Appellant also testified that she went to church one night and left Charles Randle with her parents. These statements by appellee are rather general, and in fact, it is not shown but what she took the child with her. . Of course, there could be no objection to her leaving Charles Randle at home to attend a night church service. It might be added that we cannot visualize extensive travel on $40.00 per month. At any rate, since no alimony is being paid, Mrs. Sindle might well be forced to obtain employment, in which event the child would certainly have to stay with her parents. Appellee recognizes that he would not be able to be with the child at all times, and plans for his present wife to look after Charles Randle while he is at work.

The court awarded Mr. Sindle custody of this child during the months of March, July, and November, for

the years 1958 and 1959. The reason for choosing these particular months is not shown in the record. As we stated in *Aaron* v. *Aaron,* 228 Ark. 27, 305 S. W. 2d 550:

"Divided custody of a minor child is not favored unless circumstances clearly warrant such action."

We are unable to see that such action is warranted in this instance. As previously mentioned, appellee is an itinerant construction worker, and the record does not reflect where he will be during the months he was awarded custody of the child, nor what kind of home, or surroundings he will be in. It may well be that he does not know where he will be located during those periods, but we are of the opinion that before the child is placed in his custody, the environment and home surroundings should be ascertained. There is not one line of evidence in the record to indicate the type of neighborhood, or atmosphere, to which appellee and his wife intend to take the boy. We do not know whether they rent a house, live in a trailer, or reside at a hotel. The present wife did not testify, and her attitude toward the child, or ability to care for and look after it, is not shown, except that her husband testified as to her willingness to take Charles Randle. Of course, it is recognized that a child of tender years, under normal circumstances, belongs with its mother, and as stated in *Perkins* v. *Perkins,* 226 Ark. 765, 293 S. W. 2d 889:

"* * * It is a matter of common knowledge that usually there is no love like a mother's love; this is a law of nature that is almost invariable, and unless there are compelling reasons for giving someone other than the mother custody of a small child, it should not be done."

There is no evidence here that comes close to establishing that this mother is not devoted to her child. We are unwilling to approve a transfer of part-time custody of this little fellow, still less than three years of age, from his mother, who has had the custody from the time of his birth, to the father, where he would largely be under the care of an 18 year old stepmother.

This, in our opinion, would not be for the best interest of the child. Certainly appellee is entitled to visit Charles Randle, and arrangements can be made for him to take the little boy away from the house, if visiting conditions are presently unpleasant. Mr. Sindle could take the child to town, or on a picnic, or numerous places where he would have no occasion to be annoyed or disturbed by appellant. It goes without saying that on such occasions, he should be entirely sober.

The court reduced the monthly support payments from $40 to $35 for the nine months period during which it was ordered that the mother have custody of Charles Randle. Again, we find no evidence upon which to justify a reduction. No one testified as to appellee's salary or wages. The only evidence relative to Mr. Sindle's income is as follows:

"You are asking for this decree to be modified to where you will only pay $20 a month while the child is with its mother. On what are you basing that petition?

A. Because I think I could take it and raise it for $20 a month.

Q. You think that is too much?

A. Yes, I do.

Q. Are you working for the same company you were working for at the time the decree was rendered?

A. What do you mean?

Q. This decree was rendered back in October, 1955. Were you working for that same company then?

A. Yes, sir.

Q. Are you making the same money?

A. No, sir.

Q. You are not?

A. No.

Q. How much more now than then?

A. I am not making more.''

So it is not shown that his earnings are less, nor his expenses greater, than at the time of the granting of the divorce decree. To justify a reduction in support payments, changed circumstances must be shown. *Clinton* v. *Morrow,* 220 Ark. 377, 247 S. W. 2d 1015. Of course, we know that appellee has remarried, but this is not emphasized in the testimony, nor argued as justifying a reduction in the support payments.

Appellant asks that she be allowed a reasonable attorney's fee, and we think this request should be granted. We approved an attorney's fee for the ex-wife in a child custody proceeding in *Vilas* v. *Vilas,* 184 Ark. 352, 42 S. W. 2d 379, and *Aaron* v. *Aaron, supra.* In those instances, the proceedings for modification were instituted by the divorced wives. Here, the proceeding was instituted by the ex-husband, and appellant, apparently without funds of her own, was certainly entitled to defend against the petition. We accordingly allow an attorney's fee of $100.

The decree is reversed and remanded with directions to enter a decree consistent with this opinion, and to enter an order allowing appellant's attorney a fee of $100.