LEE *v.* LEE.

5-3382                                          391 S. W. 2d 29

Opinion delivered June 7, 1965.

*John F. Gibson,* for appellant.

*N. L. Schoenfeld,* for appellee.

CARLETON HARRIS, Chief Justice. This is a child custody case. The parents are Joseph Young Lee, the father, and Bicky Chau Lee, the mother. The child involved is Cosmo Lee, three years of age at the time of the trial.

Immediately following the marriage of the parties, they went to Dumas, Arkansas, where Joseph's father was in business and made their home. In February, 1962, Bicky left the Dumas home, and went to New York City, New York, where her parents resided. In September of the same year, Joseph went to New York, taking Cosmo with him, resuming the marital relationship with Bicky until February, 1963, at which time he moved out of the home occupied by his wife and her parents, and obtained living quarters of his own. Apparently, Joseph took

Cosmo with him, for on February 26, Bicky applied for a Writ of Habeas Corpus, commanding Joseph to bring the child before a New York justice. The writ was issued, and the child was returned to appellee by agreement between the parties. An action was instituted by appellee in the New York courts for permanent separation in April, 1963, and a temporary support order was granted, but not entered immediately, pending reconciliation attempts.

On Sunday, July 14, 1963, Joseph, in accordance with an agreement with his wife, relative to visitation rights, took Cosmo from Bicky's home, but instead of returning him, left the state and returned to Arkansas. Upon reaching Memphis, Joe called his wife, and informed her that he was taking the child back to his home in Arkansas. On August 20, appellee filed in the Desha Chancery Court a petition for a Writ of Habeas Corpus, seeking the return of the boy. In the meantime, Joseph had commenced an action against Bicky for divorce, and custody of the child, and the court consolidated the two actions, as far as custody was concerned, and commenced hearings on August 28. The court denied a motion to hear the divorce case at the same time. Final testimony in the custody case was taken on February 6, 1964, and the court made extensive findings on February 19. A decree was entered in March, granting the custody of the child to the mother, Bicky. Joseph appealed, obtained a Writ of Supersedeas, and retained possession of the child. This appeal questions the correctness of the trial court's order in granting custody to appellee, appellant asserting that Bicky had deserted Cosmo, and that the court erred in failing to find that the best interest of the child required that it remain with its father, appellant herein.[1]

---

[1] The court rendered a comprehensive order as a matter of protecting the rights of the parties, as follows:

1. This court has the sole and exclusive jurisdiction to determine the custody, care, support, education and general welfare of the child in issue in this action;

2. Bicky should be awarded temporary custody of Cosmo Joseph Lee;

3. Bicky should be granted permission to remove child from the jurisdiction of this court to the City of New York, New York;

We do not think the evidence establishes that the child was abandoned. Appellant testified that she left him and the child, but appellee says that Joseph would not permit her to take Cosmo with her. Joseph himself stated that he would not have permitted her to take the child, even if she had asked. At any rate, the parties were reunited, and resumed the marital relationship,

4. That before Bicky is authorized to remove said child from the jurisdiction of this court she will (a) prepare or cause to be prepared and filed with the Clerk of this Court, a writing appointing the Clerk of this Court and his successor in office as her true and lawful agent for service of all orders and process in this action relating to the custody, care, support, education and welfare of said child and (b) file with the Clerk of this Court, a good and sufficient bond in the amount of $1,000.00, to be approved by the Sheriff of Desha County, Arkansas, payable to the State of Arkansas, for the use and benefit of Joseph Young Lee, conditioned that she will comply with the decree of this court in this action and any subsequent orders of this court made and entered herein relating to the custody, care, support, education and welfare of Cosmo Joseph Lee.

The Clerk of this Court should not issue any writ of attachment for the child in issue in this action until the above requirements have been fully satisfied by Bicky.

5. Upon the entry of the formal decree herein, Joe should deposit with the Clerk of this Court the sum of $150.00 for the use of Bicky. This amount to be used by her to apply on the expense of her trip from New York to Desha County, Arkansas, and return, to receive the custody of the child in issue.

6. The child is not to be removed from the United States without prior permission of this court.

7. The name of said child is not to be changed, nor any adoption filed or had without prior permission of this Court. Bicky, nor any person, will make any effort or effect a change of domicile of said child from Desha County, Arkansas, without prior consent of this Court.

8. Bicky will file or cause to be filed with the Clerk of this court a statement(s) showing the current address of the child at all times.

9. The court retains the issue of support for adjudication until such time as Bicky files a petition and makes proof on this issue.

10. Until the child in issue arrives at school age and begins to attend school, Joe should have the custody, for visitation purposes, during the months of June and July of each year. He should pay all expenses connected with said visitation.

11. Each out-of-custody parent should be granted the right of visitation with, and said child with him/her, at all reasonable times.

12. Should either party fail to surrender custody of the child, as directed by these findings, the Clerk of this Court, without further directions of the court, will, upon the filing of a verified pleading showing such failure, issue a writ of attachment to the proper officer authorizing and directing him to remove said child from the defaulting parent and deliver him to the other parent.

13. The court retains full and complete jurisdiction of this action for further orders relative to the care, custody, support, education and welfare of the child in issue."

subsequently in New York, and the child there lived with both parents.

The record is rather large in this case, but no good point would be served in detailing the testimony. There are no intricate questions of law to be passed upon, nor is there any feature of the case that would serve as a precedent. A fact question, only, is involved. We agree with the Chancellor that, morally speaking, both parties are qualified to have custody of the child. The record makes plain that all involved are intelligent and well educated, and the family background is interesting. Appellant's father is a prosperous grocer in Dumas, and appellee's father operates a large restaurant in New York City. He [appellee's father] formerly served in the Government of Chiang Kai-Shek, and subsequently became Controller with General Chenault's C. A. T. (transport successor to the Flying Tigers). Mr. Chau, the father of appellee, attended Columbia University, graduated from New York University, and is a citizen of the United States. Joseph works in his father's store, and Cosmo has been staying, during weekdays (8:00 A.M. to 7:00 P.M.) with a Mrs. Lee Sharp of Dumas. The child's meals are brought or sent to him from the grocery. Bicky is employed as a clerk at the Manhattan Savings Bank in New York City, and plans for her mother, 61 years of age, to look after Cosmo while she is working. The strongest evidence offered by Joseph was to the effect that his wife had been corresponding with one or two Chinese men, though, admittedly, no showing of adultery is made. Bicky's chief complaint appears to be that Joseph did not make a proper living for them. From her testimony:

"Well, the thing is his father, his parents want him to marry Chinese girl and they told me—and he told me if he wanted money from his father—and after Joe marry he has to tell his wife to work in store with them. And, they want, of course, a grandson for them. And, this is the main thing his married. His parents Idea. That he get married. And, he get married and all the expense from his father. At that time he didn't have any

regular income. If he has any money of course he has to ask his parents for money. * * *

"* * * After I came back to Dumas I try to pay all my attention to my child. I don't want to work in the store. And, I don't approve of his idea, to depend on his father or wait till his parents pass away and get the some money to support him. So, since I not work in the store his parents mad at him. And, his not make me to work in the store and the money they give him to marry me is their loss. They lost money. So, from that time they not give Joe any money. So, he cannot ask his parents for money he didn't have any income."

She testified that, while in New York, he lived with her parents, but paid no room and board; that he had a job, but would not tell her how much he made, or what he did with his money.

We have said many times that the paramount and controlling consideration in all custody cases is the child's best interest and welfare, and that each case presents a different factual situation. *Cushman* v. *Lane,* 224 Ark. 934, 277 S. W. 2d 72. We have also stated that the mother is given preference where the child is of tender age. See *Aucoin* v. *Aucoin,* 211 Ark. 205, 200 S. W. 2d 316, and cases cited therein. In *Aucoin,* the court found that the mother was guilty of some misconduct, but stated:

"The real question in the case involves the right to the custody of the three-year-old child. Appellant earnestly insists that the charge of adultery was well established and that this fact alone entitles him to the custody of the older child. * * * The trial court also decided that even though appellee was guilty of some infidelity, such determination would not change the award of custody to the mother in view of the child's tender age and the other circumstances in evidence. * * * Since we agree with the chancellor that the charge, if proved, would not necessarily change the award of custody in the instant case, we think it would be better for all concerned that the unsavory evidence adduced on this issue be left out of this opinion."

As stated, all of the circumstances in custody cases must be taken into consideration before making an award. When this is done, we are unable to say that the Chancellor's findings were against the preponderance of the evidence. The trial court retained jurisdiction of this cause, and, of course, is empowered to change the custody order, if circumstances arise that would make such change advisable.

Affirmed.

JOHNSON, J., dissents. For good cause shown, an immediate mandate is ordered.

See *Tassin* v. *Reynolds*, 222 Ark. 363.